(C. D. 1466)

FUCHS SHOE CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 1, 1952)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: In the case of *United States* v. *Weigert-Dagen et al.*, 39 C. C. P. A. 58, C. A. D. 464, the record in which has been incorporated by consent, certain Mexican footwear was classified under the general provision in paragraph 1530 (e) of the Tariff Act of 1930, for "Boots, shoes, or other footwear   *   *   *, made wholly or in chief value of leather, not specially provided for, 20 per centum ad valorem," and claimed to be huaraches, dutiable at 10 per centum ad valorem under the *eo nomine* provision for such merchandise in paragraph 1530 (e) of the Tariff Act of 1930, as modified by the Trade Agreement with Mexico, 78 Treas. Dec. 190, T. D. 50797.

The incorporated case, which concerned numerous items of merchandise, was very thoroughly tried before this court. (*Weigert-Dagen et al.* v. *United States*, 25 Cust. Ct. 105, C. D. 1272.) In addition to much oral testimony—13 witnesses having appeared on behalf of the importer and 5 for the Government—each side introduced many exhibits.

The proof in that case, however, reflected a rather wide degree of inconsistency as revealed in the observation by this court, C. D. 1272, *supra*, which was quoted with approval by the Court of Customs and Patent Appeals, C. A. D. 464, *supra*, as follows:

Not all of the witnesses, even those called by the same party, were in agreement as to what was regarded as huaraches in the footwear trade of the United States at the time of the negotiation and promulgation of the Mexican Trade Agreement, *supra*.   *   *   *.

Accordingly, the appellate court agreed with this court "that the word 'huaraches' as found in the Trade Agreement with Mexico is an ambiguous word," and then proceeded to reason this way:

The word "huaraches" being ambiguous and of doubtful meaning, and there being no clear common or commercial meaning established, it is proper for the court, in order to determine the meaning of the word and to give effect to the intent of the negotiators of the agreement, to consider the information contained in the Digest of Trade Data, *supra*, which was furnished to the negotiators before the negotiations and which was before them during the negotiations; and, while that information is not binding upon the court, it may be sufficient to establish the meaning of the ambiguous and doubtful word. If, in the light of all of the available evidence of the negotiators' intent, the information in the Digests of Trade Data establishes the meaning of the ambiguous word, then that meaning may be adopted by the court so as to give force and effect to the intent of the negotiators of the agreement.

Consistent with the foregoing, the court found that "the only convincing evidence in the record as to the intent of the contracting parties as to the meaning of the term 'huaraches'" was the definition contained in the Digests of Trade Data, which was furnished the negotiators of the trade agreement by the United States Tariff

Commission prior to and during the negotiations. That controlling definition, adopted by the appellate court, reads as follows:

Huaraches are leather-soled sandals having woven-leather uppers laced to the insole. The insole is machine-stitched to the outsole, and the heel is nailed on. They are used principally by women and girls for beach and casual summer wear.

The instant case also involves Mexican footwear, represented by the items enumerated in schedule "A," hereto attached and made a part hereof. Here, as in the incorporated case, the merchandise was assessed with the 20 per centum rate applicable under paragraph 1530 (e), *supra*, to leather footwear, not specially provided for, and is claimed to be classifiable as huaraches under the *eo nomine* provision therefor in paragraph 1530 (e), as modified, *supra*.

The parties have stipulated that the merchandise in question, exhibits 1, 2, 3, and 4, is the same in all material respects as some of the articles, exhibits 5, 10, 13, 6, respectively, passed upon in the *Weigert-Dagen et al.* case, *supra*. Differences in size and ornamental effect between the two sets of items are relatively insignificant and of no consequence.

Plaintiff has presented the instant case with the view of making applicable to the footwear under consideration, the definition of "huaraches" adopted in the *Weigert-Dagen et al.* case, *supra*, and hereinabove quoted. Toward that end, testimony was offered by William Fuchs, president of the plaintiff corporation, who also appeared in the incorporated case. In the previous case, he gave as his understanding of "huaraches," "leather footwear with woven or interlaced uppers," the principal distinguishing characteristic thereof being the "woven upper." In this case, the witness identified each of the articles under consideration, exhibits 1, 2, 3, and 4, as a leather-soled sandal, with a woven upper laced to the insole. The insole is machine-stitched to the outsole, and the heel is nailed on. Bringing the merchandise squarely within the definition accepted by the Court of Customs and Patent Appeals in the *Weigert-Dagen et al.* case, *supra*, the witness further stated that the present merchandise is used for casual and play wear.

Plaintiff's uncontradicted testimony, as just reviewed, establishes that the articles in question are huaraches within the meaning of that term, as contemplated by paragraph 1530 (e), as modified, *supra*, under the said *Weigert-Dagen et al.* case. We therefore hold the merchandise represented by the items set forth in said schedule "A" to be classifiable as huaraches under said modified paragraph 1530 (e), and dutiable at the rate of 10 per centum ad valorem, as claimed.

Protest 176782–K, having been abandoned as to entry 801681, is dismissed as to said entry.

Giving favorable effect to plaintiff's contention herein, we do so with recognition of the comprehensive testimony, clarifying, as it

does, the incomplete, if not inconsistent, statements embodied in the *Weigert-Dagen et al.* case, incorporated herein. In the said case, the testimony adduced by both parties was so indefinite as to prevent a positive determination therefrom. The condition is disclosed in the following paragraph of the decision, C. A. D. 464, *supra*, where the appellate court, adhering to findings made by this court in C. D. 1272, *supra*, said:

The Customs Court pointed out that some of plaintiff's witnesses regarded the woven upper as the only distinguishing feature of huaraches and that the method of fastening the upper to the insole by lacing was regarded as immaterial; that other witnesses for plaintiffs considered that the upper must be at least partly woven and at least partly laced to the insole in order that the article be a huarache; that witnesses for the Government distinguished huaraches from conventional footwear with woven material substituted for solid material by denominating the latter as "woven footwear" or "woven shoes" and that two of the Government's witnesses described huaraches as footwear with woven uppers which are attached to the insole by lacing through holes in the insole, the insole being fastened to the outsole by being stitched on a Goodyear machine.

In this case, plaintiff has supplied additional testimony, furnishing all the essential details to meet the definition of "huaraches," held to be all-conclusive in the *Weigert-Dagen et al.* case, C. A. D. 464, *supra*.

To the extent indicated the protests are sustained, and judgment will be rendered accordingly.